Good morning, Your Honors. Today I'm asking this Court to reverse the decision made by the District Court. And the main reason I'm asking you to do that is because whatever counterclaim my clients were required to file in response to that Georgia lawsuit, it was not compulsory. The cases we cited, the Bigley case, the Meadow Springs case, I think those cases, they crystallized what the Court is supposed to analyze when determining whether or not a counterclaim is compulsory. And here, in the Georgia case, the respondent's allegations in the Georgia case that my clients issued two false 1099s, those are, that, those allegations are totally unrelated to my client's allegations that the respondent went out on four or five different occasions and defamed my client's character. So what do we make of the fact that in the answer in the Georgia case, your client did reference some of these same defamation-type allegations that we're now seeing in the complaint in this case? Right. And with respect to that, Your Honor, that's an answer. And so our position is, and when we look at the Bigley case and the Meadow Springs, is that my client's motivation for issuing those false 1099s, of course, they admit, yes, we issued those false 1099s because we believe that the respondent defamed our character. That motivation for doing that doesn't somehow, you know, reconcile what the respondent wants the Court to reconcile. That doesn't necessarily mean, and it doesn't eviscerate the law that says we still must independently analyze whether or not these two claims arose out of the same operative facts. So the fact that my client raised these issues in an answer, but not in a counterclaim, obviously, raising the issue in an answer doesn't turn the answer into a counterclaim. We still have to analyze whether or not the counterclaim that was never brought, whether it was compulsory. What is the overall nature of the disagreement between the parties here? I mean, there seems to be a lot of stuff flying around in the Georgia case and now in this case. What's actually going on between the parties? Well, I mean, the parties obviously don't like each other. But, you know, we, but in the end, at the end of the day, we basically have, we have two claims. I mean, we have a claim that my client issued the false 1099s, which maybe it may have been true. And then we have four or five, six different occasions where my client says the other side went around and defamed their character. I mean, those really are the two, those are the only two issues in the case, really. I mean, two allegations. One has to do with the 1099s. The other ones have to do with false claims. And I believe that there's no connection between the two with respect to the operative facts or when we analyze whether or not they arose out of the same transaction or occurrence, there's no, I don't see how we, based on the case law, can get to a conclusion that those two did arise out of the same transaction or occurrence. Yeah. How then do we reconcile this with the answer that does seem to link these two things together? So, the answer, and I understand, and I... Was the answer pro se? Was the answer written pro se? Yes, it was. Okay. And, and so, and I understand what the court is saying, but again, we get around to the fact that that's just my client's motivation. You know, my client motivation for issuing the 1099s was the character was defamed. But if we look at the law, though, we look at my client sending two false 1099s. That's one act, right, that happened. Now we're looking, there's no connection. We're on different days, different nights, different occasions, and the respondent is doing something totally different. They are defaming my client's character. So, those are different time periods and everything else. So, I don't see how we get those two together and, and then, you know, come to a conclusion that they arose out of the same operative facts or the same transaction or occurrence just because my client made reference to those motivations in an answer. There were some, just as a matter of timing, my understanding is there were some alleged wrongs that you're pointing to in this lawsuit that post-state the Georgia judgment. Is that true? Yes. There were at least two or three different statements that my client attributed to the respondent in their California lawsuit that were basically eviscerated by the court because the court decided that the, my client could have brought those claims in the Georgia action, but obviously my client could never have done that because those allegations of wrongdoings occurred after the Georgia lawsuit ended. So, at the end of the day, even assuming arguendo that my client had an obligation to bring a compulsory counterclaim, those other incidences of wrongdoing, those other defamatory statements that occurred after that Georgia lawsuit ended should never have been, those causes of action should have been able to survive in a district court. There's no rationale with respect to why those allegations would have been wiped out because of this alleged duty to have brought a compulsory counterclaim previously. The district court seemed to reason that these were all in a series, you know, that all these different defamatory statements were sort of related to each other, including the ones that post-stated the Georgia judgment. Do you believe there's a kind of logic to this one in a series point that the district court relied on? Honestly, I'm not, you know, I just don't agree with the district court. I mean, if you want to say something occurred in a series, then, you know, that's kind of like opening up a Pandora's box. How do we get there? Like, if someone defames your character on one day and then decides to defame it two months later and then do it again another month later, do we just say, oh, those occurred in a series? And so, there's no way we're going to let those other wrongdoing, acts of wrongdoing be, be suitable. I don't agree. I don't understand how that, how that rationale came to be with the district court. I just don't agree with it. And I don't see how, I don't see how we would ever then be able to have other incidences that survive a lawsuit, you know, be incidences that could be suitable on if we could just with one swoop of a pen say, well, it seems to have been ongoing, so, therefore, it's a series, and so you can't sue for those wrongdoings. It kind of, it kind of allows a party then to just, after a lawsuit has ended, just to continue acts of wrongdoing without penalty. And I, I just don't, I don't believe the law was meant to have that occur. Roberts. So, Mr. Wade, you started out by saying the parties obviously don't like each other. And, you know, when you're a district judge, like Judge Seaborg or like myself, you get a lot of cases. And sometimes you would just wonder, what the heck is this case doing here? Is there, there's a personal grudge or animosity going on? Is this the best way to deal with that and to deal with the court system? And, you know, Judge Kunauer, who was Chief Judge when I joined the court, had a case where one party was dial-a-ho and the other party was call-a-ho. And they were suing over, you know, somebody copied the intellectual property. And, you know, what Judge Kunauer's response was, get the heck out of my courtroom. You know, it's like, that's not what we're here to deal with. Are we really here to deal with the personal issues that are just going to go on forever and ever between these two parties until someone steps in and solves the personal problem? Well, I mean, I definitely can appreciate that. And I know there, in every lawsuit, we have these competing motivations, right? I mean, a lot of lawsuits survive and continue for the wrong reasons. And a lot of people continue lawsuits for the wrong reasons. And it's unfortunate. And they waste a lot of money litigating over issues that ought not be litigated. I mean, that happens just all the time. And unfortunately, it's part of the system. But, I mean, at the end of the day, I do believe that the rule of law should prevail. I think that even if, you know, a court doesn't like a case or doesn't want the case before the court, I still believe that we need to follow the law and make rulings based on the law and not on personal motivations or personal dislikes about litigants. Well, I don't think anyone's suggesting otherwise. But I do share some of the concern as to what is the endgame in this lawsuit for your client? What does your client actually hope to achieve out of this realistically? Well, you know, I don't know. I wasn't, of course, I wasn't the attorney of record, you know, when the court dismissed my client's case. I was hired to do the appeal. And so, when you're a client and you feel you've been wronged, you know what I mean, by the court, I mean, no disrespect, but if you feel that, you know, there's a decision that went against you that ought not have gone against you, and there are ramifications when that happens. I mean, there are obligations to pay. Have the parties tried to sit down and work this out? Whatever this disagreement is, and I have to tell you, I asked you because it's not apparent from the papers, either in Georgia or here, what anybody's actually fighting over, other than there seems to be a deep-seated family dispute involving the sister and aunt that's causing a great deal of animosity between the parties. But has there been any effort to actually try to mediate this or somehow resolve this? Up to this point, I don't believe so. I don't believe there's been any effort to do that. I think once the decision came down, my client was just really upset, and my client wanted vindication, and my client wanted to file an appeal. And that's the route that my client took at that time. Now, that doesn't mean that, you know, if my client is successful, you know, with respect to the appeal, that we won't, you know, then have to analyze, you know, the cost of litigation and the motivations for litigation and so forth. I mean, I'm not, by no means am I saying that this case shouldn't be settled or shouldn't be resolved or anything like that. But I think after the decision came down, my client wanted vindication in court and wanted to file an appeal. But I am, I do, I do agree, you know, with the court that this, you know, this type of case, you know, ought to be kind of between the parties, you know, settled. I mean, not by the court wrongly, but by the parties, I think it should be, it should be resolved. It's the type of case that shouldn't, shouldn't be litigated. Do you want to save the rest of your time for rebuttal? Yes, I will. Okay. Thank you, Mr. Wade. Thank you, Your Honors. I hadn't planned to add any color to this at the beginning, but I think it might be helpful. The reason that this whole dispute exists is Ms. Crittenden is the sister of Ms. Muldrow's mother. Ms. Muldrow's mother is not competent. So previously, Ms. Crittenden had been the guardian and conservator of Ms. Muldrow's mother. That has since switched over after a lengthy battle, as I understand it, in North Carolina myself, to Ms. Muldrow. So Ms. Muldrow is now the caretaker, if you will, and legal guardian of her mother. There have been a series of financial jabs that have gone back and forth between the two, and quite frankly, I don't know that these two have it in them to reconcile anything when sitting across the table. I would hesitate to put them in a room together. The vitriol that you would see in the emails that they had previously sent each other, and I'm sure Mr. Wade would agree, is extreme, and there's just a deep hatred, which seems to be surrounding the financial benefits of having control and custody of the mother, or sister, from however you look at it. This is helpful background. I guess let's talk about the issue on review. Why do you think, at least for the later, the claims that postdated the Georgia judgment, how are those precluded? Well, Your Honor, first, with regard to that, I think we're all in agreement that Georgia rules of preclusion apply under the J.P. Morgan Chase derivative litigation matter, which was 26 the 263 F. Sup. 3rd, 920. Our position is, and dates are important here, the first two allegedly defamatory claims were made in January of 2022. And Your Honor's correct. Ms. Muldrow filed suit on February 2nd of 2022. And then under Rule 65a2, Judge Batten in the Northern District of Georgia advanced the case directly to a trial on the merits, which was March 22nd, 2022. Shortly after his decision in favor of Ms. Muldrow, the April comments were made, less than a month later, within the appeal deadline, and certainly during the pendency of the 11th Circuit appeal. Ms. Crittenden could have amended, could have made a motion to reopen, could have made a motion to address those concerns, which were made again almost immediately after the hearing. She didn't. She didn't elect to do that. She made no such move. The matter moved through the 11th Circuit for about 11 months, and then a motion for reconsideration was filed, which itself extended the matter further. During that entire time, there was no move made whatsoever to address the single alleged comment that occurred, again, weeks after the decision that Judge Batten handed down in the Northern District of Georgia. With regard to the connection, if you will, between the claims, we think they're absolutely we think Judge Seaborg is correct. They're absolutely within the same transaction. Not only does Ms. Crittenden state in her answer and apparently in her appellant's brief that the decision to send out these 1099s was motivated by the defamation, but if you read through the actual answer, it says in numerous places that there is a damage related to these statements. And at the end of the answer, there is a damage There's a line, and again, this was drafted by a pro se, and I understand that some reading of it should be liberally applied. There's a line that says, Motion to Demand. Plaintiff Muldrow to remove the harassing, malicious, defaming Facebook and Google posts against defendants. And that's in the record on page 56 of the record. The motion to demand, if you will, is seeking something. It's seeking relief from the court in the Northern District. It's saying we want the Northern District to force her in an injunction to remove those posts. And of course, this entire case from Ms. Muldrow's standpoint was also a case for an injunction seeking the removal or correction of the fraudulent 1099 to the zero dollar. So there are competing counterclaims. If you read the actual answer, it's just not termed a counterclaim. Again, it should be liberally applied, but it says motion to demand. Let's go back to the claims that are postdating the Georgia judgment, which are the ones that I'm more concerned about. I mean, you make the argument that they should have essentially done something more in the district court there or the Eleventh Circuit. Maybe they could have done that, but is there any authority that says they had to do that in order to avoid preclusion of a claim that hadn't actually arisen by the time of the Georgia judgment? There's not a case directly on record, Your Honor. No, not that I've seen. Directly on point, rather. The argument would be that they flow from the same series of events. It's not a unique defamatory claim. It's not something that says that she works as a prostitute or that she's a terrible caretaker of her own children. It's strictly related to the same tax transactions. You know, and of course, all of this is setting aside the likelihood that for having filed false tax returns, which has already been adjudicated, it's actually true. But true, we're not here to discuss truth. We're here to discuss the complaint in the confines and four walls of the complaint. But to the point the Court made earlier, at some point this needs to end. This has been through the Northern District of Georgia, the Eleventh Circuit, the Northern District of California, and now it's here. I hope it never reaches the Supreme Court. I think that would be a little ridiculous. These people just need to go their separate ways and end this. No one's going to be collecting damages for anything. Ms. Crittenden puts all throughout her answer that her damage and the reason she's entitled to send out 1099s, which, quite frankly, benefit her massively on her own taxes, that reduces her own taxable income, is because somebody said something bad about her. That's self-help at best. That's jumping ahead of the court system to say, now that I'm ahead of the court system, I'm going to issue a 1099 and try to create a pathway to avoid any sort of litigation over my own claims that something defamatory has been said, especially when those statements were made in accordance with the 1099s, and apparently the 1099s are in response to them. So we don't think that one comment that was allegedly made in April of 2022, a few weeks after the actual case was adjudicated in the state, that they shouldn't be considered to be part of the transaction. Not sure there's any further questions for you. Do you want to go ahead and sum up? Well, Your Honors, actually, I, to some degree, stuck my summary in there. I think it's time for this matter to end, and if we affirm the decision of the Northern District of California, I think Judge Seabrook did a great job of analyzing this. If we affirm that, hopefully this is over, and I can't imagine the U.S. Supreme Court would pick this up. Only on the shadow docket, yeah. Yes, Your Honor. And we have a rare circumstance where there is not a split between the Eleventh and the Ninth Circuit, which is helpful. Okay, thank you, Mr. Podesta. Mr. Wade, we'll hear from you. I know the Court knows this, but every court has procedures in filing a counterclaim. It has to look a certain way. It has to be submitted on its own. There are requirements for a counterclaim. There's no court that's going to turn an answer by a pro se litigant and make it a counterclaim. So counsel is referencing something that a pro se litigant stated in an answer and wants this Court to deem that as a counterclaim, and that would be inappropriate, I believe. But the main thing I'm trying to say is the district court in Georgia didn't take my client's answer as a counterclaim. There was no adjudication of my client's, you know, whatever they were asking for, motion for whatever. There was no adjudication of that. The only thing that was adjudicated in the Georgia case were the allegations made by the respondent. So even assuming somehow that we should turn that answer into a counterclaim, the Georgia Court never adjudicated it, and I will submit on that. Can I ask you just before you sit down, on the April alleged misconduct, was it just one statement, or is there more to it than that post-stated the Georgia judgment by the allegations? Yes, in our brief we do cite three other incidences of making false statements to the police, and I know those statements have certain protections and so forth, but there are three other statements that were made at different times to the police that were also in the complaint in California. So that's in April of 2022? Those were, no, I don't, I believe, I have to check the brief, I believe they were not only in April, I believe there were some after April. Was all of these false, allegedly false police reports made after April of, it's either in April of 2022 or thereafter? Yes, that's what I'm claiming, yes. Okay, were there other defamatory statements that post-stated the Georgia judgment on social media? No. Okay. Okay. Thank you, Mr. White. Thank you. Thank you both, this matter is submitted.
judges: BRESS, VANDYKE, Lasnik